UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Laura Ripka,

    Plaintiff,

v.

**MEMORANDUM OPINION AND ORDER**
Civil No. 11-0004 (MJD/LIB)

Hartford Life and Accident
Insurance Company,

    Defendant.

_____

    Andrew J. Hippert, Midwest Disability, Counsel for Plaintiff.

    Eric C. Tostrud and Scott Moriarity, Lockridge Grindal Nauen P.L.L.P., Counsel for Defendant.

_____

    Plaintiff brought this action seeking to recover long-term disability benefits under an employee welfare benefit plan sponsored by her union, the International Union of Operating Engineers Local No. 35 and insured by Defendant Hartford Life and Accident Insurance Company ("Hartford").

    This matter is before the Court on cross motions for summary judgment.

**I.    Background**

    Plaintiff was employed as an Assistant Operator for the Metropolitan

1

Waste Control Commission, but left this employment in 1994 due to disability. (HART001438.) Plaintiff began receiving Social Security Benefits in December 1994. (HART000483.) In 2010, the Social Security Administration reviewed her claim and determined that her disability was continuing. (HART000339.)

In 1994, Plaintiff also applied for long term disability benefits under the Hartford policy. (HART000896.) In her application for benefits, Plaintiff listed her disability as "severe major depression, with severe mental & physical impairment." (Id.) Plaintiff was awarded benefits under the relevant policy effective May 24, 1994. (HART000755.)

In a Physician's Statement for Continued Benefits dated May 12, 1995, Plaintiff's rheumatologist, Dr. Conrad Butwinick, indicated that Plaintiff was suffering from fibromyalgia. (HART000602.) Dr. Butwinick further opined that Plaintiff could only perform sedentary work, that it was hard for her to work around other people and that her return to work date was unknown. (HART000605.) In response to the question of the date Plaintiff could return to work "in a lighter duty capacity", Dr. Butwinick responded "part-time ???" (Id.) Plaintiff was granted benefits based on Hartford's determination that Plaintiff was disabled due to fibromyalgia and CFS.

In October 2000, Hartford obtained surveillance video which showed Plaintiff engaged in a variety of activities, including throwing brush from the back of a truck. (HART001683-84.) Plaintiff was informed in a letter dated April18, 2001 that her benefits would terminate in April 2003. (HART001589.)

Plaintiff appealed and Hartford obtained an independent medical review from Dr. Jerome Siegel. Dr. Siegel examined the surveillance video, medical records and correspondence from treating physician Dr. James Barker and exam notes from Dr. Lisa Putney. After such review, Dr. Siegel opined

> [Plaintiff] has had what appear to be chronic lifelong problems related to fatigue, depression, and anxiety. She has been diagnosed with fibromyalgia and chronic fatigue syndrome with ongoing multiple somatic complaints. The medical record documents that her subjective complaints outweigh physical examination, laboratory, and imaging abnormalities. In fact, the notes and evaluations indicate that her physical examination, laboratory studies, and x-ray studies have been normal. Despite this, [Plaintiff] has been evaluated by multiple clinicians, specialists, psychologists, and psychiatrists who have been unable to offer additional therapeutic approaches to improve her overall functional status. . . .
>
> After review of the multiple medical records and notes, I agree with Dr. Barker regarding [Plaintiff's] impaired functional status. I have reviewed the medical records between the timeframe 4/9/01 through 4/9/03 and conclude that [Plaintiff] has been physically impaired from performing even sedentary work activities on a full-time basis. This is based on the persistence of subjective symptoms consistently presented and the absence of evidence showing any significant sustained activity. . . .

> Although Dr. Barker has indicated that [Plaintiff] is totally and permanently impaired, I am unable to reach the conclusion regarding permanency at this time. I would recommend re-review of [Plaintiff's] ongoing follow-up with her current primary care physician and review of any discussions regarding attempts by [Plaintiff] to return to any type of work activities, community activities, volunteer work, or part-time work.
>
> The medical records support ongoing physical and psychiatric impairment between 4/9/01 through 4/9/03. . . . There is no exercise tolerance test, which would quantitate [Ripka's] level of conditioning or fitness. This type of information may be useful in further reviews in objectifying Ms. Ripka's ongoing complaints of fatigue and loss of energy.

(HART001444-45.) Hartford reversed its initial determination and reinstated Plaintiff's benefits in September 2003. (HART001470.)

In May 2009, as part of a review of Plaintiff's benefits, Hartford obtained independent medical reviews from two physicians: Dr. Judith Willis, a psychiatrist and neurologist and Dr. John Brusch, an internal medicine specialist. Based on a review of Plaintiff's medical files, Dr. Willis opined that Plaintiff had no neurological deficits that affected her ability to work. (HART001287-90.) She further noted that "[a]s fibromyalgia and CFIS are not in my field as a neurological specialist, I cannot comment on any limitations/restrictions related to those rheumatological diagnoses." (HART001290.) Also based on a review of Plaintiff's medical files, Dr. Brusch opined that Plaintiff can perform full-time

4

work.  (HART001293.)

> [Plaintiff] has carried a diagnosis of chronic fatigue syndrome for years. Her treating physicians support the diagnosis simply by stating that she has positive EBV virus titers or that she has a positive assay for ciguatera toxin in addition to her complaints.  These disease entities have been discounted as a cause of chronic fatigue syndrome.  She does not have Lyme disease.  Her Western blot serology is negative.  I seriously doubt that [Plaintiff] has chronic fatigue syndrome primarily because her physicians have not addressed many potential exclusionary clinical diagnoses such as significant pulmonary disease (pulmonary function testing) in this smoker, psychotic depression or schizophrenia or delusional disorders.  Any or a combination of these could explain her symptoms.  In addition, the diagnosis of chronic fatigue syndrome by itself does not automatically make one disabled.  There is no functional assessment of [Plaintiff].

(Id.)

Hartford also conducted an employability analysis of Plaintiff.  The Employability Analysis Report dated September 28, 2009 noted that Plaintiff was capable of doing full-time light or sedentary work.  (HART001256-57.)  In a letter dated October 8, 2009, Hartford notified Plaintiff that it no longer considered her to be disabled and that her benefits were terminated.  (HART000255-56.)

Plaintiff commenced an administrative appeal.  (HART000371.)  In response, Hartford asked Plaintiff to participate in functional capacity testing and a neuropsychological evaluation.  The functional capacity evaluation ("FCE")

5

was scheduled for two days in May 2010.  On the first day, Plaintiff appeared for testing, and the physical therapist, Wayne Erickson, found that Plaintiff had slight limitations on the range of motion in one shoulder, and that she developed nausea while doing heel lifts.  Erickson found that Plaintiff exhibited a slow pace for activities with reports of fatigue, but that she otherwise showed functional isometric strength in her lower extremities and an excellent range of motion in her hips, with full capacity to conduct squats.  Plaintiff did decline to perform some tests and did not appear for the second day of testing.  (HART000295, HART000298-99, HART000302.)  In a report signed May 26, 2010, Erickson noted that "Client not capable for "full" duty.  Client's report of systemic weakness after activity and poor functional capacity will limit workability."  (HART000303.)

    Dr. Aboaba Afilaka, a specialist in occupational medicine, reviewed the results of the testing conducted by Wayne Erickson and concluded that Plaintiff had "self-limited" some activities, but that based on what Plaintiff was able for perform, "overall performance falls in Sedentary category of work [for a forty-hour week.]" (HART000326.)  The administrative record contains only an unsigned and undated draft report from Dr. Afilaka.  (Id.)

A neuropsychological examination was conducted by Dr. Gregory Murrey on June 1 and 4, 2010. (HART000276.) Dr. Murrey observed that during the evaluation, Plaintiff "seemed quite absorbed with her somatic and physical complaints" and noted that Plaintiff was very "dramatic." (HART000279.) Dr. Murrey concluded that Plaintiff had mild to moderate cognitive deficits and would thus have difficulty learning new tasks or working from a regular to rapid pace. (HART000283-84.) He concluded that if Plaintiff's "reported medical and physical conditions were to significantly improve, her neurocognitive difficulties would most probably improve, even possibly back to baseline, normal functioning." (HART000284.)

After considering the independent medical reviews from Dr. Willis and Dr. Brusch and the independent neuropsychological evaluation of Dr. Murrey, as supplemented by the vocational and occupational testing performed during the appeal, Hartford concluded that Plaintiff could perform certain forms of sedentary work. The prior decision to terminate benefits was thus affirmed. (HART00057-58, HART000189-92.)

**II.    Standard of Review**

Under ERISA, a plan beneficiary has the right to judicial review of a

benefits determination.  See 29 U.S.C. § 1132(a)(1)(B).  When a policy provides the plan administrator with discretionary authority to determine eligibility for benefits, the abuse of discretion standard generally applies.  Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 641 (8th Cir. 1997).   Here, the policy provides the plan administrator discretionary authority to determine whether proof of loss to support a claim is satisfactory.  (HART001251, HART001254.)  Hartford argues that under the terms of the policy, its decision to deny Plaintiff's benefits must be reviewed for an abuse of discretion.

Under an abuse of discretion standard, the plan administrator's interpretation of the plan must be affirmed "unless it is arbitrary and capricious." Manning v. Am. Rep. Ins. Co., 604 F.3d 1030, 1038 (8th Cir. 2010) (citation omitted).  "To determine whether a plan administrator's decision was arbitrary and capricious, the court examines whether the decision was 'reasonable'. . . . Any reasonable decision will stand, even if the court would interpret the language differently as an original matter." Id. (internal citation omitted).  A reasonable decision is one that is supported by substantial evidence.  Darvell v. Life Ins. Co. of N. Am., 597 F.3d 929, 934 (8th Cir. 2010).  "Substantial evidence means 'more than a scintilla but less than a preponderance.'" Id.

In <u>Woo v. Deluxe Corp.</u>, 144 F.3d 1157, 1160 (8th Cir. 1998), the Eighth Circuit recognized that a less deferential standard of review may be applied in cases where there is evidence of a conflict of interest or a procedural irregularity which caused a serious breach of the plan administrator's fiduciary duty.  In such situations, courts were instructed to apply a "sliding scale" approach, which requires courts to apply the abuse of discretion standard while taking into consideration the conflict of interest or procedural irregularity.  <u>Id.</u>  The more egregious the circumstances, the less deference is accorded the plan administrator's decision.  <u>Id.</u>, at 1162.

The Supreme Court has since held that an inherent conflict of interest exists when a plan administrator acts as both the decision-maker in a claim determination and the payer of benefits.  <u>Metro. Life Ins. Co. v. Glenn</u>, 554 U.S. 105, 112 (2008).  Such a conflict of interest does not change the standard of review from abuse of discretion, however.  <u>See id.</u> at 115-16.  Instead, the conflict should be weighed as a factor in determining whether there is an abuse of discretion.  <u>Id.</u> at 117.  All relevant factors, including the presence of a conflict of interest, should be used as a tiebreaker when all other factors are "closely balanced."  <u>Id.</u>  A conflict of interest should be given greater importance if a party can show that

9

"circumstances suggest a higher likelihood that it affected the benefits decision." Id.

Following Glenn, there is some question as to whether that decision affected Woo's holding that a procedural irregularity changes the standard of review from abuse of discretion to a less deferential standard of review.[1] Assuming Woo still applies, the Court must first determine whether the plan administrator committed a procedural error.

> In determining whether a plan administrator committed a procedural irregularity, we examine whether the administrator labored under a conflict of interest, whether the administrator acted dishonestly or from an improper motive, or whether the administrator's benefit decision "was made without reflection or judgment, such that it was 'the product of an arbitrary decision or the plan administrator's whim.'"

Johnson v. Met. Life Ins. Co., 437 F.3d 809, 13 (8th Cir 2006). The fact that a procedural irregularity exists will not automatically warrant a less deferential standard. Hillery v. Met. Life Ins. Co., 453 F.3d 1087, 1090 (8th Cir. 2006). Rather,

---

[1]The Eighth Circuit was presented the opportunity to resolve this question, but declined to do so on the basis that the decision of the plan administrator would not stand even under an abuse of discretion standard. Wrenn v. Principal Life Ins. Co., 636 F.3d 921 (8th Cir. 2011). The court did, however, recognize that "the procedural irregularity component of the Woo sliding scale approach may . . . still apply in our circuit post- Glenn." Id. at 924 n.6 (citing Wakkinen v. UNUM Life Ins. Co. of Am., 531 F.3d 575, 582 (8th Cir. 2008) and Chronister v. UNUM Life Ins. Co. of Am., 563 F.3d 773, 776 (8th Cir. 2009)).

such a standard is invoked only where such irregularity is "so egregious that it might create a 'total lack of faith in the integrity of the decision making process.'" Id. (quoting Layes v. Mead Corp., 132 F.3d 1246, 1251 (8th Cir.1998)).

Here, Plaintiff argues that a less deferential standard of review should be applied in this case because of two procedural irregularities: given her diagnoses of fibromyalgia and chronic fatigue syndrome, Hartford should have had a rheumatologist review Plaintiff's ability to work; and Hartford relied on an unsigned, undated portion of the FCE report to deny her claim for long term disability, and that Hartford misrepresented the results of the FCE report. (See HART00303.) The physical therapist who conducted the FCE, Wayne Erickson, found that Plaintiff could, in a given day, sit, stand and/or walk in combination for a total of only four hours. (Id.) The report of the physical therapist, however, is not referenced in the denial letter.

Plaintiff cites to no authority which suggests that a particular specialist, in this case a rheumatologist, should have been consulted to determine her ability to work. Hartford need only have relied on the opinions of qualified medical specialists. The Court further notes that none of Plaintiff's current treating

physicians is a rheumatologist.[2]  In addition, Hartford is not disputing Plaintiff's fibromyalgia and CFS diagnoses.  Rather, Hartford disputes whether her fibromyalgia and CFS prevent her from working in all jobs.

A similar argument was presented in <u>Wakkinen v. Unum Life Ins. Co.</u>, 531 F.3d 575, 582-83 (8th Cir. 2008).  The plaintiff had argued that the plan administrator failed to conduct an independent review by a physician with appropriate expertise, creating a procedural irregularity.  <u>Id.</u> at 582.  The plaintiff questioned whether a board-certified occupational medicine physician was able to offer an opinion on his fibromyalgia.  <u>Id.</u>  The Eighth Circuit rejected the argument, finding that

> [plaintiff] points to no evidence that calls into question the expertise of Dr. Jacobson personally or of a doctor who specializes in occupational medicine to offer an opinion on the condition of fibromyalgia.  As the district court pointed out, UNUM did not doubt the diagnosis.  Rather, it consistently took the position that [plaintiff's] fibromyalgia was not sufficiently severe during his 180-day elimination period to render him disabled from performing his occupation, and [plaintiff's] own doctors provided no opinion to the contrary.

<u>Id.</u> at 582-83.

Plaintiff further asserts that another procedural irregularity occurred in the

---

[2] The record indicates that the last time Plaintiff was seen by a rheumatologist was in 1995.  (HART000614.)

manner in which Hartford used the results of the FCE. In its denial letter, Hartford explained that the FCE report supported its denial of benefits, because it noted that although Plaintiff had "self-limited some FCE activities . . . overall performance falls in the Sedentary category of work. The projections are for 8 hours per day/40 hours per week at the levels indicated on the FCE form." (HART000262.)

As the administrative record reveals, the only document attributed to Dr. Afilaka is an unsigned and undated summary report. (HART000326.) In this case, an unsigned and undated report takes on particular significance because it is contrary to the report prepared by Wayne Erickson, whose testing of Plaintiff was relied upon by Dr. Afilaka in reaching the conclusion that Plaintiff could perform sedentary work. Mr. Erickson opined that based on his observations "Client not capable of "full" duty. Client's report of systemic weakness after activity and poor functional capability will limit workability." (HART000303.) The Court further notes that Mr. Erickson's conclusions were not even addressed in Hartford's denial letter. (HART000262.)

The Court finds that relying on an unsigned and undated report that is contrary to the conclusions of the physical therapist that conducted the FCE

constitutes a procedural irregularity. The Court cannot find, however, that a less deferential standard of review is warranted because this procedural irregularity is not "so egregious that it creates a 'total lack of faith in the integrity of the decision making process.'" See Hillery, 453 F.3d at 1090. Accordingly, the procedural irregularity will be weighed as a factor in determining whether there is an abuse of discretion. See Glenn, 554 U.S. at 117 (finding that a conflict of interest should be weighed as a factor when determining abuse of discretion).

### III. Discussion

Under the abuse of discretion standard, Hartford's decision to deny benefits will be upheld if such decision was reasonable and supported by substantial evidence - that is more than a scintilla but less than a preponderance. See Darvell, 597 F.3d at 934. Hartford concedes that Plaintiff suffers from fibromyalgia and CFS, but argues its decision to review whether Plaintiff was qualified to continue to receive disability benefits was based on its determination that Plaintiff's treating physicians never determined how those illnesses prevented her from doing any occupation, and that none of her treating physicians actually measured Plaintiff's limitations. Hartford asserts that

substantial evidence supports its decision to terminate benefits.

From 1994 through 2009, Hartford considered Plaintiff to be totally disabled and paid her benefits under the relevant policy.  Hartford acknowledges that previous payment of benefits can be a relevant factor in determining whether substantial evidence supports the administrator's decision to terminate benefits.  Hartford argues that in this case, there was a significant change in information available to it which supports the decision to terminate benefits.  See Dillard's Inc. v. Liberty Life Assur. Co., 456 F.3d 894, 900 (8th Cir. 2006) (finding that "in the absence of a significant change in the information available to it, a plan administrator's 'previous payment of benefits is a circumstance that must weigh against the propriety of an [administrator's] decision to discontinue those payments'") (quoting MsOsker v. Paul Revere Life Ins. Co., 279 F.3d 586 (8th Cir. 2011); Humphrey v. Prudential Ins. Co. of Am., 791 F. Supp.2d 655 (D. Minn. 2011) (same).  Based on its review of the record, the Court finds that the information made available to Hartford was not so significant as to warrant the termination of benefits in this case.

When Hartford made the decision to terminate benefits in 2009, the decision was not based on new evidence that Plaintiff's physical or psychological

condition had improved. See Norris v. Citibank, N.A. Disability Plan, 308 F.3d 880, 885 (8th Cir. 2002) (finding that plan administrator's decision to terminate benefits was abuse of discretion where no new medical evidence supported such decision). In fact, the record supports a finding at Plaintiff's condition did not improve since the period of time that Hartford had found her previously qualified to receive benefits.

Dr. Willis, the independent psychiatrist and neurologist who examined Plaintiff in 2009, opined that Plaintiff had no objective abnormalities on any neurological exams. Dr. Willis would not, however, comment on any limitations/restrictions related to Plaintiff's fibromyalgia and CFS, as those conditions were not within her specialty. (HART001290.) Accordingly, Dr. Willis' opinion should be accorded little weight.

Dr. Brusch, the independent internal medicine specialist, opined that Plaintiff was capable of full-time work, but in his report, he completely failed to acknowledge Plaintiff's fibromyalgia. (HART001293.) Dr. Brusch also tried to discredit any restrictions related to CFS by disputing the diagnosis itself, and suggested instead that Plaintiff's symptoms could be caused by other diagnoses, such as pulmonary disease, psychotic depression or schizophrenia or delusional

disorders. To reach such a conclusion, however, Dr. Brusch did not acknowledge that Plaintiff has undergone significant mental health treatment, and has never been diagnosed with any of the above reference conditions. Plaintiff's treating physician, Dr. Sult, submitted a letter explaining that Dr. Brusch's misdiagnosis theory in appropriate. (HART000428.) Accordingly, Dr. Brusch's opinion should be given little weight.

In response to Plaintiff's appeal of the decision to terminate benefits, Hartford obtained a neuropsychological evaluation from Dr. Murrey and the FCE report. Rather than support the decision to deny benefits, these reports actually support a finding of disability. Dr. Murrey found that Plaintiff did suffer from significant neurocognitive difficulties, and that such difficulties would have an adverse effect on her ability to work at a rapid or regular pace, or to learn new information. Dr. Murrey opined that Plaintiff would need accommodation to allow her more time to complete mental tasks. (HART000284.) Further, Dr. Murrey did not definitively opine, or even address, whether Plaintiff would be totally physically disabled from CFS or fibromyalgia.

With respect to the FCE, Wayne Erickson, the physical therapist who conducted the FCE and who observed Plaintiff actually perform the test, noted

that Plaintiff could only sit, stand and/or walk for a total of fours a day. (HART000303.)  Based on his observations, Erickson opined that Plaintiff was not capable of full-time work.  (Id.)  After reviewing the FCE data provided by Erickson, Dr. Afilaka found that Plaintiff had demonstrated appropriate body mechanics, smooth and coordinated movement patterns and the ability to perform basic tasks, such as sitting, carrying and digital manipulation. (HART000326.)  From these findings, Dr. Afilaka opined that Plaintiff was capable of full-time work.  (HART000297-99; HART000326.)

Again, the only report from Dr. Afilaka in the record is a draft report that is unsigned and undated.  Nonetheless, given the weight of undisputed evidence that demonstrates that Plaintiff suffers from fibromyalgia and CFS, the Court finds that resolving the conflicting opinions concerning the FCE against Plaintiff was not a reasonable decision.  Dr. Afilaka's opinion is thus accorded little weight.

Based on the record as a whole, the Court finds that Hartford's decision to terminate benefits is not supported by substantial evidence because Hartford was not presented with a significant change in information as to Plaintiff's ability to return to any type of work.

### III.   Attorney's Fees

ERISA provides: "In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).  A fee claimant must, however, show some degree of success on the merits.  Hardt v. Reliance Standard Life Ins. Co., 130 S.Ct. 2149, 2158 (2010).

The Court must also keep in mind that

> ERISA is remedial legislation which should be liberally construed to effectuate Congressional intent to protect employee participants in employee benefit plans.  A district court considering a motion for attorney's fees under ERISA should therefore apply its discretion consistent with the purposes of ERISA, those purposes being to protect employee rights and to secure effective access to federal courts.

Starr v. Metro Sys., Inc., 461 F.3d 1036, 1040 (8th Cir. 2006) (citation omitted).

The Court finds that an award of attorney's fees and costs is appropriate here.

**IT IS HEREBY ORDERED** that:

1.   Plaintiff's Motion for Summary Judgment [Doc. No. 11] is GRANTED in its entirety;

2    Plaintiff is entitled to an award of costs, disbursements and other

       expenses of this litigation and reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g). Within thirty days of the date of this Order, Plaintiff shall submit an appropriate itemized petition.

3. Defendant's Motion for Summary Judgment [Doc. No. 16] is DENIED.


Date: April 3, 2012

                                    s/ Michael J. Davis
                                    Michael J. Davis
                                    Chief Judge
                                    United States District Court